**Claus D. SCHERER, Plaintiff–Appellant,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, Defendant–Appellee.**

No. 91–2277.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1992.

Decided Sept. 16, 1992.

Alan O. Amos, Amos & Associates, Chicago, Ill., argued for plaintiff-appellant.

Richard H. Schnadig (argued), Bruce R. Alper, Brian S. Williams, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Claus Scherer was employed by Baker–Perkins Printing Machinery Corporation (Baker–Perkins) from 1971 to 1989. In 1989 the company was acquired by the defendant, Rockwell International. Shortly thereafter, Rockwell terminated Scherer's employment for alleged sexual harassment of several co-workers, including his secretary, Terry Pendy. Scherer filed an action for breach of his employment contract, which contract Rockwell had assumed in the acquisition. Rockwell removed the action to federal court based upon diversity,[1] and Rockwell and Scherer both moved for summary judgment. The district court granted summary judgment for Rockwell dismissing the action in its entirety. Scherer now appeals.

## I. BACKGROUND

Following Rockwell's acquisition of Baker–Perkins and its assumption of Scherer's employment contract, Richard Luzzi, vice-president for human resources, and William Boston, another vice-president, discussed the terms of that contract. The contract provided for annual compensation in the range of $300,000 to $400,000. Boston and Luzzi were concerned about the fact that Scherer's compensation greatly exceeded that of comparable Rockwell executives. Luzzi testified in his deposition that the figure was approximately double what Scherer would have been compensated as a Rockwell executive. Both Luzzi and Boston informed Scherer that Rockwell thought his compensation was too high. Scherer indicated that he would honor his contract, and Luzzi testified that he got the impression that Scherer would not be willing to renegotiate his compensation under the contract.

---

1. The parties agree that Illinois law governs this case.

With regard to termination, Scherer's contract required that Rockwell give him a three year notice of termination, unless he was guilty of some misconduct or breach of the contract. The contract provided in relevant part as follows:

5. This agreement and your employment shall cease without notice on the last day of the month in which you attain the age of 65 years but subject thereto the employment may be terminated at any time by the Company giving you written notice effective on a date not less than three years from the date of giving such notice.

.    .    .    .    .

13. If at any time during the employment you

(a) shall be guilty of any gross default or misconduct or material breach or non-observance of any of the stipulations herein contained ...

then in any such case the Company may terminate your employment forthwith without any notice.

(R. at 56, Ex. A.)

Luzzi and Boston decided that Rockwell should give Scherer the three year notice required by paragraph 5 of his contract. Boston informed Scherer in person that Rockwell intended to honor his contract but would be giving him a three year notice of termination. Written notice, however, was never sent to Scherer. While the letter of notice was being approved by Rockwell's legal department, allegations of sexual harassment surfaced. Terry Pendy, Scherer's secretary, complained of sexual harassment to a lower level executive at Baker–Perkins, who inquired of Luzzi what Pendy could do about it. Luzzi suggested that Pendy contact him, and she did. Luzzi met with Pendy, who described three instances of sexual harassment by Scherer. Joseph Salter was then sent to Baker–Perkins to perform an organizational audit in which employees were encouraged to communicate openly with Salter about their con-

cerns. The published purpose of the audit was "to determine trends in the work place that may have contributed to recent turnover of employees as well as determine other sources of employee discontent." (R. at 56, Ex. C.) Pendy spoke with Salter at length about Scherer's sexual harassment of her. Several other employees reported experiencing, observing, or hearing of Scherer's sexually harassing behavior. Salter reported his findings to Boston and Luzzi, who then determined that Scherer should be terminated for "misconduct," pursuant to paragraph 13(a) of his contract. A termination letter was sent to Scherer which identified sexual harassment as the reason for his termination.

In his pleadings, Scherer admitted that he was terminated by Rockwell and that the reason given was alleged sexual harassment of several co-workers. Scherer then affirmatively stated that the allegations of misconduct were untrue and unfounded. Rockwell moved for summary judgment. In support of its motion, it submitted excerpts from the depositions of Scherer himself; his secretary, Terry Pendy; the Rockwell investigator, Joseph Salter; two Rockwell vice-presidents, Richard Luzzi and William Boston; and Scherer's direct superior, Michael Leggatt. Rockwell also submitted transcripts of Leggatt's interviews with Baker–Perkins employees, in which several employees related specific incidents of sexual harassment by Scherer.[2] In response to Rockwell's motion and in support of his own cross motion for summary judgment, Scherer submitted further excerpts from all of the same persons' depositions, except for Pendy's deposition. Scherer asserted that Rockwell actually terminated him because of his refusal to renegotiate his employment contract which Rockwell executives considered to be "too rich."

Pendy described many specific instances of sexual harassment in her deposition. She told of Scherer's comments to her regarding her anatomy, of instances of un-

---

**2.** At trial these transcripts would be hearsay but could presumably be admitted to show the state of mind, or good faith belief, of the Rockwell executives in terminating Scherer. We do not, however, rely upon them here because, as explained below, a good faith belief of sexual harassment was not sufficient reason to terminate Scherer under his contract.

welcome touching, and of his comments about his extramarital affairs with other women. She described these incidents in detail, relating the location, what was said, who was present, and how she felt. She also testified that Scherer told her that he had told others that they were having an affair. She then described an incident where she had asked for a pay raise, and she remembered that he responded, " 'Well, you could be making more money if you perform favors, certain favors, on the side and you could receive bonuses' [or] something to that effect." She further testified that Scherer asked her out for drinks three to five times and to his cabin in Michigan for a weekend. She declined all of his invitations and frequently objected to his behavior, but to no avail. Instead, she testified that the frequency of his offensive behavior increased during the term of her employment.

In Scherer's deposition, he admitted inviting one of his co-workers out for dinner and drinks and sending her flowers. When questioned about other specific incidents, he testified that he could not recall those incidents. He was then asked whether he denied that those incidents occurred, and he responded only. that he could not recall them. Later in his deposition when asked about the charges contained in his termination letter, he stated that the charges were untrue and generally denied that he had ever sexually harassed a co-worker. He further testified that he had told others at the time of his termination that the charges were untrue and unfounded.

The district court held that the term "misconduct" in paragraph 13(a) of Scherer's contract was unambiguous when read in its plain and ordinary meaning. Scherer argued that any misconduct must relate to the stipulations and duties set out in the contract itself and could not, therefore, relate to sexual harassment which was not mentioned in the contract. The district court rejected this argument stating, "Such a construction is grammatically awkward and nonsensical." The court further noted that such an interpretation would make the list of terms in paragraph 13(a) redundant. The district court then determined that there was no disputed issue of fact concerning Scherer's breach of contract claim and granted summary judgment for Rockwell.

## II.  DISCUSSION

■ Because Judge Shadur has thoroughly and completely analyzed Scherer's arguments concerning the ambiguity of the term "misconduct" in his contract, and any additional discussion by this court would add little, if anything, we adopt the district court's opinion on that issue as the opinion of this court. The district court's opinion is published at 766 F.Supp. 593 (N.D.Ill.1991). In response to Scherer's criticism of the district court's opinion, we note only that a contractual term may be unambiguous even though its ordinary meaning encompasses more than one type of conduct. Under this contract, there was no reason to limit the term "misconduct" to its narrowest possible scope.

■ We now turn our attention to Scherer's challenges to the district court's judgment on the merits of his breach of contract claim. We review the district court's grant of summary judgment *de novo* and apply the same standard as that employed by the district court. *McMillian v. Svetanoff,* 878 F.2d 186, 188 (7th Cir. 1989). A summary judgment may be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In granting summary judgment for Rockwell, the district court stated,

> Rockwell need not establish sexual harassment by a preponderance of the evidence, as a court must, but could surely terminate him for 'misconduct' found reasonably and in good faith. More than ample evidence existed for a good faith determination that Scherer, who has produced no evidence to the contrary but only his bare denials, had engaged in sexual harassment.

Rockwell argued and the district court agreed that Rockwell only needed to show that it acted in good faith in terminating Mr. Scherer because it had a good faith belief that he had committed sexual harassment. We do not agree with that standard. Illinois law provides that a covenant of good faith and fair dealing is implied in every contract. *Foster Enter., Inc. v. Germania Fed. Sav. & Loan Ass'n*, 97 Ill. App.3d 22, 52 Ill.Dec. 303, 308, 421 N.E.2d 1375, 1380 (1981). "Good faith between contracting parties requires that a party vested with contractual discretion must exercise his discretion reasonably and may not do so arbitrarily or capriciously." *Id.* 52 Ill.Dec. at 309, 421 N.E.2d at 1381. However, paragraph 13(a) under which Scherer was terminated does not give Rockwell discretion in its termination decision. The contract states, "If at any time during the employment you (a) *shall be guilty* of any gross default or misconduct or material breach or non-observance of any of the stipulations herein contained ... then in any such case the Company may terminate your employment forthwith without any notice." (emphasis supplied). The language, on its face, requires that Scherer be actually guilty of one of the listed acts. The contract does not provide that Rockwell may terminate him if it has a "good faith belief" that he committed misconduct nor does it otherwise provide for Rockwell's exercise of discretion. Therefore, Rockwell must show the absence of a genuine issue of fact as to whether Scherer was actually guilty of sexual harassment in order to properly support its motion for summary judgment.

In addition, the district court implied that the plaintiff's bare denials, regardless of their form, could not create a genuine issue of fact to preclude summary judgment. Indeed, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmoving party "may not rest upon the mere allegations or denial of [his or her] pleading," but the nonmoving party's own affidavit or deposition will constitute such affirmative evidence to defeat a summary judgment motion, Fed.R.Civ.P. 56(e), even if it includes only bare denials. *See, Gatlin v. Jewel Food Stores*, 699 F.Supp. 1266, 1268 (N.D.Ill.1988). This is particularly true where, as in this case, the alleged sexual harasser would be hard-pressed to garner any further evidence that the harassment did not occur.

The real question, therefore, is not whether Scherer presented more than his bare denials, but whether the evidence he presented was sufficient to create a genuine issue of fact for a jury. In order for an issue to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The moving party has the initial burden of showing the absence of a genuine issue of fact, but once that burden has been fulfilled, the nonmoving party has the burden of producing evidence that could support a jury verdict in his favor. *Id.* at 256, 106 S.Ct. at 2514.

Even under the more demanding standard which required Rockwell to show actual sexual harassment rather than sufficient information to support a "good faith belief," Rockwell has clearly fulfilled its burden of showing the absence of a genuine issue of fact. Pendy's deposition, described above, gave a detailed description of Scherer's sexually harassing behavior, which behavior was gross enough to be "misconduct." She described specific instances of harassment. In addition, Salter's deposition described the company's investigation of the charges, thus providing further evidence that the allegations were not manufactured by Rockwell. This evidence was sufficient to show that Scherer actually committed sexual harassment and to shift the burden to Scherer to produce evidence which could have supported a jury verdict in his favor.

As we explained above, a bare denial of sexual harassment could, in certain circumstances, provide evidence to support a jury verdict. A jury could choose to believe

denials of specific allegations; however, Scherer did not produce any such denial. When questioned about the specific instances of sexual harassment, he did not deny that the incidents occurred, but instead stated that he could not recall. In other sections of his deposition, he stated that he generally denied having sexually harassed any co-worker. Given his unwillingness or inability to deny the specific allegations upon direct inquiry, his few denials of the broad accusations would not be sufficient evidence to support a jury verdict in his favor.

Scherer presented substantial evidence to show that Rockwell was dissatisfied with his relatively high compensation and had decided to give him the three year notice of termination as required in his contract. This evidence combined with specific denials that the sexually harassing incidents occurred could support an inference that Rockwell simply manufactured the sexual harassment allegations to avoid the three year notice requirement in Scherer's contract. However, evidence of Rockwell's discontent by itself does not support such an inference. Scherer may not defeat Rockwell's properly supported summary judgment motion without offering any evidence from which a jury could determine that the alleged sexual harassment did not actually occur and by merely asserting that the jury might disbelieve Rockwell's witness because of Rockwell's motive and desire to get out of the contract. *See, Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

Scherer further argues that his deposition shows that Pendy harbored anger toward him because of her feeling that she was underpaid and, thus, she had a reason to fabricate the sexual harassment allegations. That section of his deposition was not, however, submitted in support of his response to the summary judgment motion and was not in the district court record. Scherer cites this court to his motion to open discovery in which he refers to that section of his deposition in arguing that he should be allowed to depose Pendy in order to expose her bias. Argument is not evidence upon which to base a denial of summary judgment. The nonmoving party, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Because we hold that Scherer did not produce sufficient evidence to support a jury verdict in his favor, we do not reach Rockwell's argument that Scherer's failure to controvert material portions of its local Rule 12(m) statement required summary judgment for Rockwell.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.