**RSR CORPORATION and Quemetco, Inc., Plaintiffs,**

v.

**AVANTI DEVELOPMENT, INC., et al., Defendant.**

**No. IP 95–1359–C–M/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

July 9, 1999.

Richard S. VanRheenen, VanRheenen & Associates, Indianapolis, IN, William A. Brewer, III, Bickel & Brewer, Dallas, TX, Deborah Deitsch–Perez, Bickel & Brewer, New York City, for RSR Corp. and Quemetco Inc.

Richard A. Aherns, Douglas B. King, Joseph R. Alberts, Wooden & McLaughlin, Indianapolis, IN, Paul G. Roland, Ruckelshaus Roland Kautzman & Hasbrook, Indianapolis, IN, for Avanti Development Inc., Bojac Metals Corp., Zinc Chemical Co., Big V Associates, Romos Industries Inc., Western Lead Products Quemetco Inc. and St. Joe Minerals Corp.

Patricia McCrory, Harrison Moberly, Indianapolis, IN, for Ace Battery Inc. and Indiana Battery Co., Inc.

Thomas J. Costakis, Kreig Devault Alexander & Capehart, Indianapolis, IN, Damon R. Sedita, Schwartz Tobia Stanziale Becker Rosenweig & Sedita, Montclaire, NJ, for Vornado Realty Trust.

Terri A. Czajka, Ice Miller Donadio & Ryan, Indianapolis, IN, for Exide Corp.

Andrew M. McNeil, Bose McKinney & Evans, Indianapolis, IN, for Brodey & Brodey Inc.

Judith E. Overturf, Blythe & Ost, Indianapolis, IN, for J. Solotken & Co., Inc.

John R. Cromer, Harrison & Mobley, Indianapolis, IN, for Allied–Signal Inc.

Keith L. Beall, Beall & Beall, Fishers, IN, for SW Industries Inc.

Frank J. Deveau, Sommer & Barnard, PC, Indianapolis, IN, for Corning Inc. and Lucent Technologies Inc.

Richard C. Ford, Leanne Burnett, Crowe & Dunlevy, Oklahoma City, OK, for Madewell & Madewell Inc., Melvin Madewell and Billy Madewell.

John R. Cromer, Harrison & Mobley, Indianapolis, IN, Susan M. Franzetti, Sonnenschein Nath & Rosenthal, Chicago, IL, for GNB Technologies Inc.

D. Brandon Johnston, Knowles & Associates, Carmel, IN, for North American Capacitor Co.

R. Robert Stommel, Lewis & Wagner, Indianapolis, IN, Lance W. Cargill, Akin, Gump, Strauss, Hauer & Feld, Dallas, TX, for Red Diamond Battery Co.

John R. Carr, III, Buschmann Carr & Shanks, P.C., Indianapolis, IN, Leonardo E. Robinson, Plews Shadley Racher & Braun, Indianapolis, IN, for Oxide and Chemical Corp., American Oxide Corp.,

Indiana Oxide Corp. and Oxide Services Corp.

Richard A. Aherns, Lewis Rice & Fingersh, St. Louise, MO, Douglas B. King, Wooden & McLaughlin, Indianapolis, IN, for Doe Run Resources Corp.

Dennis P. Reis, Rachel A. Schneider, Quarles & Brady, Milwaukee, WI, Charles A. Grandy, Indianapolis, IN, for Johnson Controls, Inc.

Offer Korin, Katz & Korin, Indiana, IN, for Capital City Metals Inc.

Michael S. Wallack, Wallack & Wallack, P.C., Indianapolis, IN, for Recycling Group Inc.

Donn H. Wray, Stewart & Irwin, P.C., Indianapolis, IN, T.F. Olt III, Lane & Waterman, Davenport, IA, for Alter Barge Line, Inc.

### ORDER

McKINNEY, District Judge.

Both of the plaintiffs, RSR Corporation and Quemetco, Inc., ("Plaintiffs" or "RSR/Quemetco") and the defendant, Alter Barge Line, Inc., ("Alter Barge"), have filed motions for summary judgment in this matter. The Plaintiffs claim Alter Barge is liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675 (1995), for "arrang[ing] for disposal or treatment . . . of hazardous substances." *Id.* at § 9607(a)(3). Alter Barge contends it is not responsible for clean-up costs under CERCLA because it delivered a useful product, not a solid waste. The parties have filed briefs in support of their cross-motions for summary judgment and the issues are now ready to be resolved. For the reasons discussed below, the Court **GRANTS** Alter Barge's motion for summary judgment and **DENIES** RSR/Quemetco's motion.

### I.  FACTUAL & PROCEDURAL BACKGROUND

In 1994, the Environmental Protection Agency, ("EPA"), found that the property on which a secondary lead smelter was located contained contaminants. The secondary smelter was managed by Benjamin McKinney ("McKinney"), whose company,

Quemetco, Inc. ("Quemetco"), owned property under various titles at the contaminated site from 1964 to 1972. McKinney Dep. at 22, 140, 148. The contaminated property is now referred to as the "Avanti" site. Quemetco and others had used the Avanti property for years to operate a secondary lead smelter. McKinney Dep. at 21–22. A secondary smelting operation collects scrap materials containing lead and processes them to produce new usable forms of lead. *Id.* at 21. Edward L. Puckett ("Puckett"), a former employee of the smelter, explained that "smelting" is the process of placing scrap lead in a furnace to recover pure lead, lead oxide, and other lead alloys. Puckett Dep. at 190; McKinney Dep. at 21. In 1972, Quemetco ceased its operations at the Avanti site. McKinney Dep. at 140, 148. Quemetco was later acquired by Plaintiff, RSR Corporation. Third Am.Compl. ¶ 74.

The Avanti site Quemetco had used for its smelter, and the surrounding residential property, were found by the EPA to be contaminated with lead, a hazardous substance. 1994 Admin. Order Pursuant to § 106(a) of CERCLA & Liability Act of 1980, as Am. 42 U.S.C. § 9606(a) ("Admin.Order"). The EPA directed RSR/Quemetco and others to clean up the site. *Id.* RSR/Quemetco filed this action in 1995 against Alter Barge and other defendants, seeking contribution to its clean-up costs pursuant to CERCLA. 42 U.S.C. §§ 9607, 9613. The Plaintiffs claim that Alter Barge is a responsible person under CERCLA because Alter Barge had arranged for the treatment or disposal of hazardous substances at the Avanti site. Third Am.Comp. ¶¶ 7, 24.

According to Donald Geurink ("Geurink"), a former Alter Barge employee, Alter Barge was in the business of collecting scrap metals from the marketplace, including copper, brass, aluminum, lead, zinc, and steel, and preparing them for consumer use. Geurink Dep. at 7, 8, 12. Alter Barge also received used batteries, usually as part of a larger shipment of other scrap metals. *Id.* at 10. Collecting used batteries was not one of Alter

Barge's main business activities. However, to ensure that sellers would continue supplying it with materials, Alter Barge never refused used batteries when they were brought in as part of a larger delivery of scrap metals. *Id.* at 12, 13. As Geurink explains, "batteries were not really our biggest focus. We were basically a metal company ... [but] somebody would come in and say, 'Here is what I got; you either buy everything from me or ... someone else will take everything.'" *Id.* at 12. Alter Barge took everything offered by a scrap metal seller in order to remain competitive with other metal recyclers in the area. *Id.* at 13. In addition, Alter Barge occasionally bid for used batteries from the government. *Id.*

Upon receiving the used batteries, the company would break them open to salvage usable metals. *Id.* at 14. This involved cutting the case off the battery to remove the lead parts inside, referred to as lead plates. *Id.* Usually, Alter Barge collected the lead plates on a barge and shipped them to secondary lead smelters when enough had accumulated, approximately once a month. *Id.* at 15, 23, 47, 48. An employee of Quemetco, Lawrence Bartlett ("Bartlett"), initiated contact with Alter Barge to purchase the company's lead plates. Bartlett Dep. at 161; Geurink Dep. at 26. Beginning in 1970, and continuing for approximately one and one-half to two years, Quemetco purchased lead plates from Alter Barge to use in its lead smelter. Bartlett Dep. at 161, 162, 272; Geurink Dep. at 26; Puckett Dep. at 186. Alter Barge sold to Quemetco only when Quemetco offered a price higher than other secondary smelters. Guerink Dep. at 26. Pursuant to the arrangement it had with Quemetco, Alter Barge delivered the reclaimed lead plates to the Avanti site by truck. Geurink Dep. at 26, 27.

This order discusses the potential liability of Alter Barge. In a previous ruling on a motion for summary judgment filed by co-defendant, Ace Battery, Inc. ("Ace"), the Court granted summary judgment in Ace's favor. *RSR/Quemetco v. Avanti,* IP 95–1359, Order Dated June 25, 1999 ("Order"). Because of the many factual similarities between Ace's situation and Alter Barge's, this Court has applied the law as explained in its previous Order, to grant summary judgment in favor of Alter Barge.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact is material only if it might affect the outcome of the suit in light of the substantive law. *Id.*

The moving party has the initial burden to show the absence of genuine issues of material fact. *See Schroeder v. Barth,* 969 F.2d 421, 423 (7th Cir.1992). This burden does not entail producing evidence to negate claims on which the opposing party has the burden of proof. *See Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 & n. 3 (7th Cir.1994). The party opposing a summary judgment motion bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Scherer v. Rockwell Int'l. Corp.,* 975 F.2d 356, 360 (7th Cir.1992). The opposing party must "go beyond the pleadings" and set forth specific facts to show that a genuine issue exists. *See Hong v. Children's Mem. Hosp.,* 993 F.2d 1257, 1261 (7th Cir.1993), *cert. denied,* 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994). This burden cannot be met with conclusory statements or speculation, *see Weihaupt v. American*

*Med. Ass'n,* 874 F.2d 419, 428 (7th Cir. 1989), but only with appropriate citations to relevant admissible evidence. *See* Local Rule 56.1; *Brasic v. Heinemann's Inc., Bakeries,* 121 F.3d 281, 286 (7th Cir.1997); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 923–24 (7th Cir.1994). Evidence sufficient to support every essential element of the claims on which the opposing party bears the burden of proof must be cited. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a summary judgment motion, a court must draw all reasonable inferences "in the light most favorable" to the opposing party. *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir. 1992). If a reasonable fact finder could find for the opposing party, then summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992). When the standard embraced in Rule 56(c) is met, summary judgment is mandatory. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Shields Enters.,* 975 F.2d. at 1294.

The Court will review defendant's motion for summary judgment in light of the foregoing standard.

## III. DISCUSSION

### A. SUMMARY OF ARGUMENTS

Plaintiffs assert that Alter Barge is a "responsible person" under CERCLA because it "arranged for the disposal or treatment" of lead, a hazardous substance, at the Avanti site. Pls.' Mem. In Opp'n. to Alter Barge Line, Inc.'s Mot. for Summ.J. and in Supp. of Pls.' Cross–Mot. for Summ.J. at 1. More specifically, Plaintiffs contend that Alter Barge dumped lead, a hazardous substance, at the Avanti site. According to the Plaintiffs, CERCLA is a strict liability statute that holds Alter Barge liable regardless of whether it intended its delivery of lead plates to be for purposes of disposal or treatment. Further, Plaintiffs maintain that Alter Barge may not invoke the useful product defense in this instance because the lead plates

were no longer fit for their original intended use as car batteries. Therefore, Plaintiffs conclude that the Court should enter summary judgment in favor of RSR/Quemetco and find that Alter Barge is a responsible person under CERCLA.

In response, Alter Barge asserts that it is not a responsible person under CERCLA and is therefore not liable for clean-up costs. Alter Barge argues that the delivery of lead plates to the Avanti site was not an arrangement for the disposal or treatment of waste, but was a delivery of a useful/valuable product, and that neither party intended for such activity to be a disposal or treatment of waste. Instead, Alter Barge contends that the process of reclaiming and selling lead plates to Quemetco constituted a valuable business activity for both parties. Correspondingly, Alter Barge asserts that summary judgment should be entered in its favor.

### B. ANALYSIS

#### 1. Statutory Framework

■ CERCLA was enacted by Congress in 1980 to "provide clean-up of hazardous waste from polluted sites throughout the United States." *Pneumo Abex v. High Point Thomasville & Denton,* 142 F.3d 769, 773 (4th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 407, 142 L.Ed.2d 330 (1998). To hold a defendant liable for clean-up costs under CERCLA, the law requires satisfaction of a four-part test. Plaintiffs must show that: "(1) the site in question is a 'facility' as defined by CERCLA; (2) the Defendant is a 'responsible person' for the spill as defined by CERCLA; (3) there was a release of hazardous substances; and (4) such a release caused the Plaintiff to incur response costs." *Environmental Transp. Systems, Inc., v. ENSCO, Inc.,* 969 F.2d 503, 506 (7th Cir.1992); *see also United States v. Wedzeb Enterprises, Inc.,* 844 F.Supp. 1328, 1333 (S.D.Ind.1994). There is no dispute in this case as to elements (1), (3), and (4). Therefore, the issues before the Court relate to the second element, wheth-

er Alter Barge is a responsible person under CERCLA.

Persons are responsible for CERCLA clean up when their activities fit in one of four categories. 42 U.S.C. § 9607(a)(1)–(4) (1995).[1] Plaintiffs allege that Alter Barge is liable under the third category, which provides that "any person who by contract, agreement, or otherwise arranged for disposal or treatment, of hazardous substances ... shall be liable." 42 U.S.C. § 9607(a)(3). This category is called "arranger liability."

Whether the transactions between Quemetco and Alter Barge were arrangements for either disposal or treatment requires careful analysis. *See U.S. v. Wedzeb*, 809 F.Supp. 646, 657; *United States v. Petersen Sand and Gravel, Inc.*, 806 F.Supp. 1346, 1354 (N.D.Ill.1992). CERCLA defines treatment and disposal the same as they are defined by the Solid Waste Disposal Act. 42 U.S.C. § 6903.[2] Plaintiffs would have the Court decide this issue categorically, by finding that a delivery of lead plates, a hazardous substance, is undoubtedly an arrangement for disposal or treatment. However, it is necessary to examine the details of the particular transaction between Alter Barge and Quemetco to determine whether the delivery of lead plates truly constituted an arrangement for disposal or treatment, or whether it was a bona fide sale of a useful product.

■ The Fourth Circuit has explained when liability for arranging for treatment should be found.

> The Solid Waste Disposal Act (SWDA) definition of 'treatment' presupposes discard. Had the authors of CERCLA not intended to adopt the presupposition of SWDA, they were certainly capable of defining 'treatment' otherwise ... Therefore, 'treatment ... of hazardous substances' as used in CERCLA refers to a party arranging for the processing of discarded hazardous substances or processing resulting in the discard of hazardous substances.

*Pneumo*, 142 F.3d at 774. Therefore, to find that Alter Barge arranged for the treatment of a hazardous substance requires the Court to determine whether the arrangement was for the discard of the

---

1. The four categories of responsible persons subject to clean-up costs under CERCLA are:
   (1) the owner and operator of a vessel or a facility,
   (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
   (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing hazardous substances, and
   (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the occurrence of response costs, of a hazardous substance, shall be liable ...
   42 U.S.C. § 9607(a)(1)–(4).

2. The Solid Waste Disposal Act (SWDA) provides the following definition of treatment:

> The term "treatment" when used in connection with hazardous waste, means any method, technique, or process, including neutralization designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume. Such term includes any activity or processing designed to change the physical form or chemical composition of hazardous waste so as to render it nonhazardous.

42 U.S.C. § 6903(34). The same statute also defines disposal as:

> discharge, injection, dumping, spilling, leaking, or placing, of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

*Id.* at § 6903(3).

lead plates. This requirement is necessary to finding an arrangement for disposal as well; the transaction must have been for the purpose of discarding the hazardous substances. *See Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651, 654 (N.D.Ill.1988), *aff'd,* 861 F.2d 155 (7th Cir.1988), ("liability for damages under § 9607(a)(3) attaches only to parties who transact in a hazardous substance in order to dispose of or treat the substance ... hence the sale of a hazardous substance for a purpose other than its disposal does not expose defendant to CERCLA liability").

■■■ It follows that arranger liability may be defeated when a defendant asserts and proves it was not disposing of, or delivering for treatment, a hazardous substance, but was selling a useful product. *See Prudential Ins. Co. v. U.S. Gypsum,* 711 F.Supp. 1244, 1253 (D.N.J.1989); *see also Douglas County, Neb. v. Gould, Inc.,* 871 F.Supp. 1242, 1245 (D.Neb.1994) *(quoting Catellus Dev. Corp. v. United States,* 34 F.3d 748, 750 (9th Cir.1994)). When the useful product defense is raised, the court must look beyond the defendant's assertions and "determine whether a transaction in fact involved an arrangement for the disposal of a hazardous substance." *Douglas County,* 871 F.Supp. at 1245, *(quoting United States v. Aceto Agr. Chemicals Corp.* 872 F.2d 1373, 1381 (8th Cir.1989)). "Merely characterizing the transaction as a sale ... is insufficient to avoid liability." *Prudential,* 711 F.Supp. at 1254. "There is no bright line between a sale and a disposal and the determination necessarily turns on a fact-specific inquiry into the nature of the transaction." *Douglas County,* 871 F.Supp. at 1245; *see also Pneumo,* 142 F.3d at 775 (employing a balancing test to determine whether a transaction was for discard of hazardous waste or for sale of valuable materials); *Amcast Indus. Corp. v. Detrex Corp.,* 2 F.3d 746 (7th Cir.1993) (courts look for an intent to dispose).

Some courts have found that "lead plates ... reclaim[ed] from spent batteries fall squarely within the law and regulations governing storage, disposal, and treatment of hazardous waste." *U.S. v. ILCO,* 996 F.2d 1126, 1130 (11th Cir.1993) (asserting that spent batteries and their components are subject to regulation by the EPA). However, the issue in this case goes far beyond the holding in *ILCO.* In that case, the sole issue was whether lead parts were a solid waste regulable under the Resource Conservation and Recovery Act ("RCRA"). Aside from the fact that *ILCO* was decided under RCRA, it also did not address the useful product defense, as is asserted by Alter Barge in this case. The issue before this Court, although implicating the *ILCO* holding, further questions whether a sale of such lead plates could lead to CERCLA liability. To resolve that issue, the Court now turns to a fact-specific inquiry about the particulars of the transaction between Alter Barge and Quemetco.

### 2. Intent

■■■ As explained in the order granting summary judgment for defendant Ace, the Seventh Circuit finds the issue of the defendant's intent relevant to determining whether the transaction in question was an arrangement for disposal or treatment, or the sale of a useful product. Order at 10. Because the useful product defense also contemplates a bona fide sales transaction, the Court must examine both the subjective intent of the parties, as revealed by their actions, and whether that intent was justifiable. *Id.*

■■■ The Court must look beyond a mere assertion by Alter Barge that the lead plates, although a hazardous substance, were delivered by Alter Barge for productive use by Quemetco. The factors this Court will consider when assessing Alter Barge's intent include: the type of agreement arranged between the two parties; the benefits reaped by the parties as a result of their transaction; and the purpose and or motive of the transaction. *Id.* at 10, 11.

· One of Alter Barge's business activities was to break used batteries purchased from scrap dealers and reclaim the lead plates inside, an activity that generated a profit. Although not a primary business activity, Alter Barge engaged in battery breaking to stay competitive among scrap metal dealers. Alter Barge primarily received used batteries as part of a seller's larger shipment. If Alter Barge refused the batteries, it is likely they would have lost the entire shipment being offered, as well as any future business with that supplier. In addition, even though breaking batteries was not one of its main activities, Alter Barge found it profitable, as evidenced by its regular monthly shipments to several secondary smelters. That profitability motivated Alter Barge to submit bids to the government to buy used batteries. It also caused Quemetco to initiate contact with Alter Barge to obtain battery breaking services. Additionally, Alter Barge sold to Quemetco only when that smelter's offer was higher than other secondary lead smelters with whom Alter Barge regularly did business.

These facts make it unlikely that Alter Barge intended its sale of the lead plates to be an arrangement for the disposal or treatment of a hazardous material. To fully and properly characterize the transaction it is helpful to look at the intent of Quemetco, as a party to the arrangement with Alter Barge. A reasonable inference is that Quemetco intended the arrangement with Alter Barge to be for a bona fide sale, rather than an effort to assist Alter Barge in disposing of or treating hazardous materials. As mentioned above, Quemetco solicited Alter Barge's business in order to use recovered lead plates, a less expensive alternative to purchasing newly-mined lead. The transaction arranged between the parties allowed Alter Barge to make a profit and Quemetco to purchase less expensive sources of lead. None of these facts are consistent with a finding that Alter Barge intended to dispose of lead plates with Quemetco.

The more reasonable inference is that Alter Barge intended its activity to be a bona fide business transaction involving a useful product, rather than an arrangement for the disposal or treatment of lead plates. The Court finds that the intent of both parties to the transaction was for it to be a bona fide transaction of a useful product. However, this Court must also rule out the possibility that the product was not in fact useful. Although a defendant may intend to transfer a useful product, when the product contains a hazardous substance, the court must determine whether it is commercially viable. *Id.* at 12. The useful product defense, asserted by Alter Barge requires the court to further examine the transaction to determine whether Alter Barge's intent to sell a useful product was actually fulfilled.

### 3. Useful Product

Once again, the Court turns to the explanation of the law regarding the useful product defense provided in its Order granting summary judgment for Ace Battery, Inc. Order at 12. To determine the value of the material in question, its worth must be assessed. The marketplace provides a reasonable, objective measure of a product's worth. Order at 13. The relevant question, therefore, is not whether the lead plates were still useful as originally intended, but whether they were a commercially-valuable product at the time of sale. For the reasons that follow, this Court finds that the sale of the lead plates retrieved from the spent batteries constitutes the sale of a commercially-valuable product.

Once they are retrieved from the battery casing, the lead plates become a useful product because they provide a source of secondary lead. Order at 14. Evidence of that worth is found in Quemetco's willingness to pay Alter Barge for the lead plates, and the fact that Alter Barge had several secondary lead smelter customers competing for its product. It is also found in the fact that the lead plates are not a

by-product of Alter Barge's business operation. Although battery breaking is not Alter Barge's primary business focus, they have found that purchasing used batteries to recover and sell the lead plates within, provides revenue and helps maintain good relations with their scrap suppliers. For these reasons, the Court cannot agree with RSR/Quemetco that this case is analogous to one in which the defendant merely sells used batteries. In that case, the transaction is readily discernable as an arrangement for disposal or treatment, unlike the transaction between Alter Barge and Quemetco.

As it did with Ace Battery, the Court finds that the defendant Alter Barge is distinguishable from the defendants in the line of used battery cases that were found liable for CERCLA clean-up costs. *See e.g. Catellus Dev. Corp. v. United States,* 34 F.3d 748, 753 (9th Cir.1994) (defendant found liable for disposal of spent batteries, which constituted waste); *Gould Inc. v. A & M Battery & Tire Service,* 933 F.Supp. 431, 436–37 (M.D.Pa.1996) (defendants found liable for clean-up costs of battery-breaking site to which they sold used batteries); *Chatham Steel Corp. v. Brown,* 858 F.Supp. 1130, 1143 (N.D.Fla.1994) (same); *Chesapeake and Potomac Tel. v. Peck Iron & Metal,* 814 F.Supp. 1269, 1272–75 (E.D.Va.1992) (defendant who collected used batteries and sold to battery breaker held liable for clean-up costs of battery-breaking site). A key factual distinction between the defendants in the cited cases and Alter Barge, which tips the balance away from finding Alter Barge liable, is that Alter Barge did not sell used batteries to reclaimers, nor were used batteries a by-product of its ordinary business. On the contrary, Alter Barge applied its own labor to the used batteries it had purchased from scrap dealers to reclaim the useable lead inside and sell that product to RSR/Quemetco. It was the lead plates, not the used batteries, that were delivered to the Avanti site. This distinction is crucial to the useful product defense and for distinguishing between persons who sell a used product to dispose of it, and those whose sale is a part or their profit-making ventures. Order at 16.

Although selling lead plates was not Alter Barge's primary business activity (as it was for Ace), its activity of reclaiming lead plates from used batteries and selling them to RSR/Quemetco still constituted a valid business activity that provided a profit to Alter Barge and helped it maintain good relations with its scrap suppliers. For this reason, Alter Barge's transactions are much more analogous to those of defendant Ace, than to the defendants who had arranged for the disposal of whole spent batteries. *See e.g. Douglas County.* 871 F.Supp. at 1247 (where the court held that defendant's reclamation and sale of lead plates did not constitute an arrangement for disposal and that defendant was not a responsible person subject to liability under CERCLA).

Alter Barge engaged in the activity of reclaiming lead plates to maintain good business relations with its suppliers as well as to make a profit by creating and selling a new and useful product. It then sold the reclaimed lead plates to Quemetco, a secondary lead smelter. Quemetco now seeks to recover from Alter Barge the clean-up costs of the smelter site. However, the fact that Quemetco actively solicited Alter Barge's business and competed to buy reclaimed lead plates, indicates that their transactions were the bona fide sale of a useful product. Consequently, Alter Barge did not arrange for the disposal or treatment of hazardous materials, lead plates, and is therefore not a responsible person under CERCLA.

## IV. CONCLUSION

In conclusion, the Court finds that Alter Barge has met the necessary factors to prove its sale of a hazardous substance was of a useful product and not an arrangement for its disposal or treatment. The Court has examined both the intent of the parties to the transaction, and whether the product sold has a productive use. The analysis included assessing the worth

of the product, i.e. its commercial viability; whether the product was a by-product of the defendant's principal business operation; the usefulness of the product as sold; and the motivation behind the sale. Order at 21. The Court is satisfied that the elements of the useful product defense were met.

Both RSR/Quemetco and Alter Barge agree that this issue is appropriate for summary judgment. Therefore, this Court concludes that as a matter of law, Alter Barge's sale of lead plates to Quemetco was not an arrangement for disposal or treatment pursuant to 42 U.S.C. § 9607(3). As a result, Alter Barge is not a responsible person subject to CERCLA liability. Alter Barge's motion for summary judgment is **GRANTED.** RSR/Quemetco's motion for summary judgment is **DENIED.**