The State of **NEW YORK**, Plaintiff,

v.

**SOLVENT CHEMICAL COMPANY, INC., et al., Defendants.**

No. 83–CV–1401C.

United States District Court, W.D. New York.

Dec. 3, 2002.

---

Jaeckle, Fleischmann & Mugel, LLP (Dennis P. Harkawik, Esq., of Counsel), Buffalo, NY, for Solvent Chemical Company, Inc.

Choate Hall & Stewart (H. Hamilton Hackney, III, Esq., of Counsel), Boston, MA, for Third–Party Defendants Benjamin Sack and Bay State Smelting Co., Inc.

CURTIN, District Judge.

On August 14, 2002, this court issued a decision and order granting summary judgment in favor of third-party defendants Bay State Smelting Company, Inc. and Benjamin Sack (collectively, "Bay State") on the action brought against them by defendant/third-party plaintiff Solvent Chemical Company, Inc. ("Solvent") seeking contribution pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f), for response costs associated with environmental remediation at the inactive hazardous waste disposal site located at 3163 Buffalo Avenue in Niagara Falls, New York (Item 1147). The court also denied Solvent's cross-motion for summary judgment declaring Bay State liable under CERCLA. Solvent has now moved for reconsideration pursuant to Fed.R.Civ.P. 60(b) (Item 1156), and Bay State has moved for an order pursuant to Fed.R.Civ.P. 54(b) directing the entry of partial final judgment in its favor (Item 1158). Oral argument of these motions was heard on October 7, 2002. For the following reasons, Solvent's motion for reconsideration is denied, and Bay State's motion for entry of judgment is granted.

Solvent seeks relief under Rule 60(b), which by its terms provides that "the court may relieve a party ... from a final judgment, order, or proceeding" on various grounds, including "any other reason justifying relief from the operation of the judgment" if made within a reasonable time. Fed.R.Civ.P. 60(b)(6). While recognizing that this rule may provide a basis for reconsideration of a non-final order (such as the summary judgment ruling at issue here), *see, e.g., Demaio v. Mitchell,* 1998 WL 9226, at *1 (N.D.N.Y. Jan. 7, 1998), courts in the Second Circuit have repeatedly cautioned that a motion for reconsideration is not to be used as a vehicle for wasteful repetition of arguments already briefed, considered, and decided. *See Torf v. Metromedia Paging Services, Inc.,* 1996 WL 118559, at *4 (E.D.N.Y. March 5, 1996); *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990). This is because, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964), *quoted in Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992).

Indeed, the standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.,* 70 F.3d 255, 257 (2d Cir.1995). Thus, the limited

grounds recognized by the courts as justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways*, 956 F.2d at 1255 (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790); *see also Peca v. Delta Air Lines, Inc.*, 2000 WL 914112, at *1 (W.D.N.Y. July 7, 2000).

No such grounds have been convincingly presented here. In its forty-page decision and order, rendered on the papers after the parties declined oral argument (*see* August 20, 2001 Order, Item 1036), the court found that the zinc oxide "flue dust" and "sal skimmings" which Bay State sold to Solvent during the period from 1974 to 1978, and which Solvent used in its zinc chloride manufacturing process, qualified under the "useful product" defense to CERCLA arranger liability. The court thoroughly examined the facts pertaining to the business arrangement between Bay State and Solvent as set forth in the pleadings, affidavits, and exhibits on record, and found the following facts to be undisputed:

- Bay State collected and sold zinc oxide as a raw material.

- The zinc oxide was collected in bag house filters and was sold to Solvent "as is," without further treatment or processing by Bay State.

- The sale of zinc oxide was one of several sources of revenue generated by Bay State's non-ferrous scrap smelting operations.

- Solvent purchased zinc oxide from a number of suppliers in addition to Bay State.

- Solvent listed "flue dust" as a "raw material" in its production reports.

- The cost of zinc oxide was included by Solvent as a production cost for its final product, zinc chloride.

(*See* Item 1147, p. 22). Focusing on the legal significance of these facts in light of the various factors which the cases have found pertinent to the "useful product" inquiry, the court determined that Bay State had properly asserted and established the defense, and was entitled to summary judgment dismissing Solvent's complaint against it as a matter of law.

The court also devoted a significant portion of its analysis to determining the reliability of the opinions expressed in the affidavit of Solvent's chemical engineering expert, Dr. E. Bruce Nauman. The court carefully examined the factual support offered by Dr. Nauman as a basis for his conclusion that the zinc material sold by Bay State to Solvent was "waste" rather than "product"—specifically, the price paid by Solvent for the material, as contrasted with the concurrent market price for zinc oxide as listed in the *Chemical Market Reporter*, intra-company memoranda indicating that the materials shipped by Bay State were contaminated with debris; and, inventory documents suggesting that Solvent considered large quantities of the material valueless. The court found Dr. Nauman's opinions unreliable and "probative of no material fact ..." (Item 1147, p. 39), and struck the expert affidavit from the record. The court also found that the exhibits attached to the Nauman affidavit, while admissible, did not provide evidence "enough to raise a question of material fact that the useful product defense does not apply." (*Id.*)

In moving to reconsider, Solvent once again relies on these same exhibits to support the argument that the disparity between the documented market rates for zinc oxide and the price Solvent paid for the Bay State products, along with the

contaminated condition of the shipped materials and Solvent's devaluation of significant amounts of inventory, establishes at the very least a genuine issue of fact as to whether the sales were arrangements for disposal. This is essentially the same position previously expressed by Dr. Nauman in his now-stricken expert affidavit. As reflected in the court's August 14, 2002 decision and order, this argument was fully and carefully considered by the court, and was soundly rejected.

To bolster the position that Bay State's flue dust and sal skimmings were waste and not useful product, counsel for Solvent asserted at the October 7, 2002 oral argument that the materials contained between sixty percent and eighty percent zinc oxide. While this position finds some support in the record, *see* Item 1157, Ex. A ("[t]hese flue dusts are very good in quality with an average of 70–80% ZnO content and very few other impurities"), it was not clearly or forcefully presented in the prior briefs and affidavits. Instead, Solvent focused on the contaminated condition of the flue dust shipments, *see id.* ("[t]he only drawback with these flue dusts is that they are full of 'junk'—plastic sheets, beer cans, steel plates, and other garbage"), and the disparity between the price it paid for the flue dust and the price for commercial grade zinc oxide listed in the *Chemical Market Reporter* (*see, e.g.,* Dow Aff., Item 1056, ¶¶ 15, 19–21). In this court's view, this apparent shift in emphasis with respect to the quality of the Bay State zinc materials serves only to further illustrate the minimal probative value of the price comparison provided by Dr. Nauman, which was addressed at some length in the court's August 14, 2002 decision. As stated there by the court:

> Although Dr. Nauman purports to base his opinion on "accepted standards established by the industry," he does not provide any explanation of what the industry standards may be for various grades of zinc oxide that would lead to the conclusion that the material produced by Bay State is "waste." He provides no information concerning how the zinc oxide material produced by Bay State differs in quality from the least expensive grade of zinc oxide other than the price. This kind of superficial analysis is not helpful. There is only a price differential, and that is only one element that courts evaluate, in context, to determine if a material is a product or a waste.

(Item 1147, p. 30) (citation omitted).

█ Solvent also refers to several cases which were not cited in the extensive briefing previously submitted to the court. For example, Solvent places considerable reliance on *In RE MICRONUTRIENTS INTERNATIONAL, INC. SUPERFUND SITE*, 6 E.A.D. 352, 1996 WL 130956 (E.P.A. March 25, 1996), a United States Environmental Protection Agency ("EPA") Environmental Appeals Board decision, which rejected the "useful product" defense urged on behalf of six steel manufacturers and the former operator of a zinc smelter who transferred their "flue dusts" to a fertilizer manufacturer for further processing and use as a fertilizer additive. While the ruling in *MICRONUTRIENTS* provides a well-reasoned analysis of the same legal issue presented in this case under similar factual circumstances, it contains few of the same category of findings of undisputed fact central to this court's summary judgment determination. As an administrative ruling rendered more than five years prior to Solvent's extensive briefing of the "useful product" issue, the Environmental Appeals Board's *MICRONUTRIENTS* decision is neither controlling nor intervening, and presents no new or previously unavailable evidence, data, or information that might reasonably be ex-

pected to alter the conclusion reached by the court.

Solvent also cites *Tippins Inc. v. USX Corp.*, 37 F.3d 87 (3d Cir.1994), and *Owen Electric Steel Co. v. Browner*, 37 F.3d 146, 150 (4th Cir.1994), which were cited by the Environmental Appeals Board in the *MICRONUTRIENTS* decision. These cases, both decided eight years ago, likewise present no intervening change in the controlling law, and are in any event distinguishable on their facts. To illustrate, *Tippins* involved the equitable allocation of response costs incurred as the result of a release of hazardous substances caused by the disposal of accumulated electric arc furnace dust generated during the dismantling and resale of a used electric furnace baghouse. Neither the Third Circuit's opinion nor the opinion of the district court, *see Tippins, Inc. v. USX Corp.*, 1993 WL 739659 (W.D.Pa. October 15, 1993), contains any meaningful discussion of the "useful product" doctrine. *Owen Electric* involved the determination of whether "slag" generated during the electric arc furnace steel production process constituted a "solid waste" under the Resource Conservation and Recovery Act ("RCRA"). The Fourth Circuit's opinion contains little in the way of analysis helpful to the application of CERCLA's "useful product" doctrine. *Cf. RSR Corp. v. Avanti Development, Inc.*, 69 F.Supp.2d 1119, 1126 (S.D.Ind.1999) (fact-specific inquiry as to applicability of CERCLA's useful product defense "goes far beyond" inquiry whether product is solid waste regulable under RCRA).

Significantly, Solvent has not offered any explanation for failing to cite these cases in the briefs previously submitted, nor has it made any further showing of "clear error" or "manifest injustice" that might result as a consequence of relieving Bay State from CERCLA contribution liability at this stage of the litigation.

Based on this analysis, I find nothing in the motion papers or oral argument to show or suggest that the court's August 14, 2002 summary judgment rulings were clear error indicated by an intervening change of controlling law, the discovery of new evidence, or the need to prevent manifest injustice. Accordingly, Solvent has failed to meet the strict requirements for relief from operation of the court's order directing entry of summary judgment in favor of the Bay State defendants. Solvent's Rule 60(b) motion (Item 1156) is denied.

Finally, in the absence of any objection by Solvent (*see* Item 1165), and upon "express determination that there is no just reason for delay" in finally resolving the third-party action against Bay State Smelting Company, Inc. and Benjamin Sack, Bay State's motion for entry of partial final judgment pursuant to Fed. R.Civ.P. 54(b), is granted for the reasons set forth in the notice of motion (Item 1158) and accompanying memorandum of law (Item 1159).

The Clerk of the Court is directed to enter judgment in favor of third-party defendants Bay State Smelting Company, Inc. and Benjamin Sack.

So ordered.