DOUGLAS COUNTY, NEBRASKA,
Plaintiff,

v.

GOULD, INC., et al., Defendants.

No. 8:CV90–00395.

United States District Court,
D. Nebraska.

Dec. 19, 1994.

James S. Jansen, Douglas County Atty., Christine A. Lustgarten, Deputy County Atty., Omaha, NE, John L. Wittenborn, Kathryn M.T. McMahon, Collier, Shannon, Rill & Scott, Washington, DC, for Douglas County.

Richard C. Ford, Wesley C. Fredenburg, Leanne Burnett, Crowe & Dunlevy, Oklahoma City, OK, for Madewell & Madewell, Inc.

## MEMORANDUM OPINION

STROM, Chief Judge.

This matter is before the Court on defendant Madewell & Madewell, Inc.'s motions for summary judgment (Filing Nos. 948 and 1108) and plaintiff Douglas County's motion for summary judgment (Filing No. 1130). After careful consideration of the briefs, the exhibits and the applicable law, the Court finds that defendant's motions should be granted and plaintiff's motion denied.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A material issue is genuine if it has any real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87,

106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the Court must view all evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. However, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. And if the plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. The Court reviews defendants' motions for summary judgment in light of the foregoing standard.

## FACTS

In 1984, Douglas County ("plaintiff") purchased the property involved in this action. Remedial investigations conducted in 1987 and 1988 revealed that high levels of arsenic, antimony, cadmium and lead existed throughout the site. Previous owners, including Gould, Inc., GNB, Inc., and Aaron Ferer & Sons, Inc., had operated a secondary lead smelter and battery recycling facility on the site. Plaintiff filed this action to recover response costs under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA" or the "Act").[1] Plaintiff named the previous owners and a litany of "generator" defendants including Madewell & Madewell, Inc. ("Madewell" or "defendant").

Madewell operates a spent lead-acid battery reclamation facility in Jones, Oklahoma. Madewell receives shipments of spent batteries which are broken to release the sulfuric acid. After the sulfuric acid drains into a waste neutralization tank, Madewell saws off the battery tops and removes the lead plates by hand. Madewell then crushes the battery casings into chips, which are rinsed and then sold for reuse to manufacturers of plastic products. Madewell sells the lead plates at

---

1. 42 U.S.C. § 9601 *et seq.*

market price to manufacturing companies to be used in lieu of lead ore.

Madewell sold lead plates reclaimed from spent lead-acid batteries to Gould for use in Gould's secondary smelting operation. After the sale, Madewell retained no interest, title or control over the lead plates or their handling. Similarly, Madewell had no right or control over Gould's smelting operation. The sale of these lead plates forms the basis of Douglas County's theory of recovery against Madewell.

## DISCUSSION

To recover from Madewell, CERCLA requires Douglas County to show that (1) the Gould site is a "facility" under CERCLA; (2) there was a "release" or "threatened release" of a "hazardous substance" from the site; (3) the release caused Douglas County to incur response costs; and (4) Madewell is a "responsible party" pursuant to 42 U.S.C. § 9607(a). *United States v. Petersen Sand & Gravel, Inc.,* 806 F.Supp. 1346, 1349 (N.D.Ill. 1992). There is no dispute that the first three elements are met. Thus, the issue is whether Madewell is a "responsible person" under the Act.

CERCLA imposes liability for clean-up costs on four classes of persons. Douglas County alleges that Madewell falls within the third category of "responsible persons:"

> (3) any person who by contract, agreement, *or otherwise arranged for disposal or treatment ... of hazardous substances* ... at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances.

42 U.S.C. § 9607(a)(3) (emphasis supplied). There is no question that lead is a hazardous substance under the Act and that lead contaminated the Gould site in question. Similarly, the parties have presented no evidence to the Court that Madewell "contracted" or "agreed" with Gould for the disposal or treat-

ment of the lead plates; instead, the transaction in question was a sale. Thus, the sole issue for determination is whether Madewell, by selling reclaimed lead plates to Gould, "otherwise arranged" for their disposal or treatment. Absent an arrangement for the disposal of a hazardous substance, liability under 42 U.S.C. § 9607(a)(3) cannot attach. *Prudential Ins. Co. v. United States Gypsum,* 711 F.Supp. 1244, 1253 (D.N.J.1989).

■ CERCLA defines the terms "disposal" and "treatment" by reference to the Solid Waste Disposal Act.[2] 42 U.S.C. § 9601(29). "Treatment" is defined essentially to mean the process of neutralizing a hazardous substance.[3] There is no evidence that Madewell shipped the lead plates to Gould to have them processed from a hazardous substance into a non-hazardous substance. Accordingly, the Court holds that Madewell did not arrange for their "treatment."

■ Thus, the Court must determine whether Madewell "otherwise arranged for the *disposal*" of the lead plates. In interpreting this phrase, federal courts have created the following legal principles which guide the Court. First, it should be noted that CERCLA does not define the term "arrange" and courts must give it a liberal interpretation to further CERCLA's remedial goals. *United States v. Aceto Agric. Chems. Corp.,* 872 F.2d 1373, 1380 (8th Cir.1989). Nevertheless, courts "must reject a construction that the statute on its face does not permit, and the legislative history does not support." *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.,* 915 F.2d 1355, 1363 (9th Cir.1990). As one court, in construing the terms of § 9607(a)(2), stated:

> To the point that courts could achieve "more" of the legislative objectives by adding to the lists of those responsible, it is enough to respond that statutes have not only ends, but limits. Born of compromise, laws such as CERCLA and SARA do not pursue their ends to their logical limits. A court's job is to find and enforce

---

2. 42 U.S.C. § 6901, *et seq.*

3. Treatment means:

   [A]ny method, technique, or process, including neutralization, *designed to change the physical,*

*chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste non-hazardous.*

42 U.S.C. § 6903(34) (emphasis supplied).

stopping points no less than to implement other legislative choices.

*Edward Hines Lumber Co. v. Vulcan Materials Co.,* 861 F.2d 155, 157 (7th Cir.1988). Accordingly, courts have held that the phrase "arrange for the disposal" "clearly circumscribes the types of transactions in hazardous substances to which liability attaches, narrowing liability to transactions in the disposal or treatment of such substances." *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651, 654 (N.D.Ill.1988), *aff'd on other grounds,* 861 F.2d 155 (7th Cir.1988).

■ Parties do not "arrange for the disposal" and thereby incur CERCLA liability merely by selling a hazardous substance. *AM Int'l, Inc. v. International Forging Equip. Corp.,* 982 F.2d 989, 999 (6th Cir. 1993). "If a party merely sells a product, without additional evidence that the transaction includes an 'arrangement' for the ultimate disposal of a hazardous substance, CERCLA liability would not be imposed." *Florida Power & Light Co. v. Allis Chalmers Corp.,* 893 F.2d 1313, 1317 (11th Cir.1990). The sale of a useful, although hazardous substance, to serve a particular purpose, is not an arrangement for disposal and will not impose CERCLA liability. *International Forging Equip. Corp.,* 982 F.2d at 999. "Selling hazardous substances as part of a complete, useful product does not generally make a party a responsible person." *United States v. Petersen Sand & Gravel, Inc.,* 806 F.Supp. 1346, 1354 (N.D.Ill.1992). Neither does selling a useful substance to a third party who, in the manufacturing process, incorporates it into a product which is later disposed. *United States v. Aceto Agric. Chems. Corp.,* 872 F.2d 1373, 1381 (8th Cir. 1989).

On the other hand, a party is a responsible person if they arranged for the *disposal* of a hazardous substance. Although defined by the act,[4] "disposal" necessarily includes the concept of "waste." *Catellus Dev. Corp. v.*

*United States,* 34 F.3d 748, 750 (9th Cir. 1994). As one court stated:

> Looking at the term disposal in the context of the statute, however, it is clear that liability attaches to a party who has taken an affirmative act to dispose of a hazardous substance, that is, "in some manner the defendant must have *dumped* his waste on the site at issue," as opposed to convey a useful substance for a useful purpose.

*Prudential Ins. Co. v. United States Gypsum,* 711 F.Supp. 1244, 1253 (D.N.J.1989) (emphasis in original) (citations omitted).

■ Merely characterizing a transaction as a sale, however, cannot insulate a party from CERCLA liability. Courts must look beyond defendant's characterizations to determine whether a transaction in fact involves an arrangement for the disposal of a hazardous substance. *Aceto Agric. Chems. Corp.,* 872 F.2d at 1381. There is no bright line between a sale and a disposal and the determination necessarily turns on a fact-specific inquiry into the nature of the transaction. "[A] party is a responsible person when a transaction—even though characterized as a 'sale'—is a sham for a disposal." *Petersen Sand & Gravel,* 806 F.Supp. at 1354.

■ With these principles in mind, the Court must examine the nature of the transaction in question and determine if it constituted a prohibited arrangement for the disposal of a hazardous substance or a permissible sale of a useful product.

Douglas County argues that the sale of lead plates to Gould constitutes an "arrangement for disposal or treatment" pursuant 42 U.S.C. § 9607(a)(3) and relies largely on the decision in *United States v. ILCO,* 996 F.2d 1126 (11th Cir.1993). In *ILCO,* the EPA appealed a decision in an action to enforce the provisions of the Resource Conservation and Recovery Act ("RCRA"), arguing that the district court erred in holding that lead plates reclaimed from spent batteries were

---

4. "Disposal" is defined to mean:
[T]he discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste onto or on any land or water so that such solid waste or hazardous

waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters.
42 U.S.C. § 6903(3).

not hazardous waste because the defendant did not discard the batteries, but instead purchased them as raw materials. The court reversed, holding that the lead plates were not "raw materials" but were in fact hazardous waste subject to regulation under the RCRA.

The decision in *ILCO,* however, is factually distinguishable from the present case. The contaminated site in *ILCO* was owned by the defendant which both (1) processed spent batteries as Madewell does; and (2) operated a secondary smelter as Gould did. The processing of the batteries which largely contributed to the contamination in *ILCO* occurred on the site. In the present case, however, the processing of the batteries occurred in Oklahoma and Madewell's only connection with the site was the sale of lead plates to Gould.

More importantly, the decision in *ILCO* can be distinguished on a legal basis. In *ILCO,* the court was faced with a very narrow legal issue: "The sole question of law raised by EPA on appeal is whether lead parts, which have been reclaimed from spent car and truck batteries for recycling purposes, are exempt from regulation under RCRA." *Id.* at 1130. Douglas County relies on the language in *ILCO* in which the court determined that the lead plates constituted "discarded hazardous waste" and thus subject to RCRA regulation. Specifically:

> *Somebody* has discarded the battery in which these components are found. [The fact that the battery was discarded] does not change just because a reclaimer has purchased or finds value in the components.

*Id.* at 1131 (emphasis in original). Undoubtedly the court was correct in holding that the batteries, and consequently the lead plates within, were "discarded." This, however, is not the issue in the present case. Instead, this Court must decide if the sale of these lead plates by a party whose business it is to reclaim them from batteries, constitutes an "arrangement for disposal" under CERCLA. As stated above, an arrangement for disposal occurs when a party merely wants to get rid of a substance as opposed to convey a useful

product. In this regard, even the court in *ILCO* recognized that "[t]he lead plates and groups are, no doubt, valuable feedstock for a smelting process." *Id.*

Douglas County also relies on the decision in *Catellus Dev. Corp. v. United States,* 34 F.3d 748 (9th Cir.1994). In *Catellus,* the defendant, General Automotive, collected lead acid batteries from its customers as trade-ins. General would then sell the batteries to a battery reclamation facility which disposed of the battery casings on plaintiff's property. The casings contained lead which contaminated the site in question. Plaintiff sought CERCLA response costs against General pursuant to 42 U.S.C. § 9607(a)(3). The district court granted General's motion for summary judgment [5] and the Ninth Circuit Court of Appeals reversed. The court held that "disposal" necessarily includes the concept of waste and because spent batteries could be defined as waste, General could be held liable for arranging for their disposal.

Douglas County argues that the situation in *Catellus* and the present case are indistinguishable. This is not so. In *Catellus,* General collected the batteries in its operation of automotive stores and then sold them to a reclamation facility. After reclaiming the lead, the reclamation facility discarded the casings which polluted the site in question. In contrast, Madewell purchased the whole spent batteries, processed them, and then sold the pure lead to Gould. Thus, the contamination in *Catellus* resulted from the disposal of worthless battery casings as opposed to the sale of valuable lead plates.

Nevertheless, the decision in *Catellus* is instructive. In holding that the whole spent batteries constituted waste, the court stated:

> [W]e look more closely at the details of the battery recycling procedure. An inescapable fact is that the leftover battery casings must be disposed of. The battery casings, like the slag in [*Louisiana–Pac. Corp. v.*] *ASARCO* [*Inc.,* 24 F.3d 1565 (9th Cir.1994)], but *unlike the lead plates within the casings,* were not a subject of recycling. They retained their character as waste throughout and would have to be

5. *Catellus Dev. Corp. v. United States,* 828    F.Supp. 764 (N.D.Cal.1993).

"gotten rid of," either by General, which could have cracked the batteries itself before selling the scrap lead, or as was the case here, by [reclaimer] after it bought the entire battery.

*Id.* at 752. Thus, *Catellus* supports this Court's conclusion that in determining liability pursuant to § 9607(a)(3), a distinction can be drawn between a seller of whole spent batteries and a seller of reclaimed lead from such batteries. In selling whole spent batteries, the seller is merely getting rid of a product which has no use except to reclaim the lead inside. *Chesapeake & Potomac Tel. Co. v. Peck Iron & Metal Co.,* 814 F.Supp. 1269, 1275 (E.D.Va.1992).[6] In such a case, the sale is actually a disposal. As the language above indicates, however, a reclaimer and seller of lead plates creates a new and useful product which may be incorporated into the buyer's manufacturing process without imposing liability on the seller as an arrangement for its disposal. Had *Madewell's* reclamation site been contaminated, no doubt the battery suppliers would have been liable. But that is not the case here. CERCLA liability will not attach if a transaction involves the sale of a new useful product as opposed to the sale of a substance merely to get rid of it. *Id.*

In *United States v. Petersen Sand & Gravel, Inc.,* 806 F.Supp. 1346 (N.D.Ill.1992), the court applied this rule in holding that a seller of a hazardous, yet useful product was not a responsible person pursuant to § 9607(a)(3). In *Petersen,* the EPA sought recovery costs from Commonwealth Edison Company, an electricity provider, which produced "fly ash" as a by-product of coal combustion. Commonwealth sold some fly ash which was used in road construction on the site and contributed to its contamination. Noting that certain grades of fly ash is commercially valuable as a raw material for road base, the court stated:

> Certainly, seller liability for the later misuse by the buyer of useful but hazardous ingredients in a manufacturing process was not intended by CERCLA's authors;

such liability would chill permissible manufacturing.

*Id.* at 1354–55. The same applies to the present case. The Court will not extend CERCLA liability to Madewell which sold a hazardous, but useful product to Gould which was responsible for its misuse. To hold otherwise would inhibit Madewell and other companies like it which create a useful and productive product from what would otherwise be hazardous waste.

Finally, the Court finds support for this conclusion in a line of cases which impose liability pursuant to § 9607(a)(3) on sellers of hazardous by-products of their manufacturing process. *Louisiana–Pac. Corp. v. ASARCO Inc.,* 24 F.3d 1565 (9th Cir.1994) (copper manufacturer arranged for disposal of "slag"); *California v. Summer del Caribe,* 821 F.Supp. 574 (N.D.Cal.1993) (can manufacturer arranged for disposal of "solder dross"); and *United States v. A & F Materials Co.,* 582 F.Supp. 842 (S.D.Ill.1984) (manufacturer of aircraft arranged for disposal of "spent aluminum etch caustic solution"). In concluding that an "arrangement for disposal" had occurred, the courts focused on the fact that the substances were by-products, they had a nominal commercial value and the manufacturers wanted to get rid of them whether they could sell them or not. Unlike the substances in these cases, the lead plates are not a by-product of Madewell's operation. Instead, the lead plates are Madewell's principal business product. In addition, the lead plates were sold at the market price for lead and with the intent of making a profit.

## CONCLUSION

Both Douglas County and Madewell agree that this issue is appropriate for summary judgment. Accordingly, the Court concludes as a matter of law that Madewell's reclamation and sale of lead plates to Gould did not constitute an "arrangement for disposal" pursuant to 42 U.S.C. § 9607(a)(3). Therefore, Madewell is not a "responsible person" subject to liability under CERCLA and Made-

---

**6.** In holding that seller of spent batteries to reclamation facility arranged for their disposal, the Court in *Chesapeake* stated: "But the only remaining 'use' of the batteries sold ... was that lead, a hazardous substance could be reclaimed from them. As batteries per se, they had no use." 814 F.Supp. at 1275.

# 1248

well's motions for summary judgment will be granted. Douglas County's motion for summary judgment will be denied. A separate order will be issued in accordance with this opinion.