343 F.Supp.2d 809 (2004)
UNITED STATES of America, Plaintiff,
v.
MALLINCKRODT, INC.; Shell Oil, Company; and Solutia, Inc., Defendants.
Mallinckrodt, Inc., and Solutia, Inc., Counterclaim and Third-Party Plaintiffs,
v.
United States of America, Defense Logistics Agency,
v.
Anheuser-Busch, Inc., et al., Third-Party Defendants.
No. 4:02CV01488 ERW.
United States District Court, E.D. Missouri, Eastern Division.
March 5, 2004.
*812 Denise Roberts, Kansas City, KS, Elizabeth L. Loeb, Paul Stokstad, Thomas L. Sansonetti, Dawn B. Goldsmith, U.S. Department of Justice, Washington, DC, Joseph G. Nassif, Raymond W. Gruender, III, Office of U.S. Attorney, Charles R. Hobbs, II, Husch and Eppenberger, LLC, St. Louis, MO, for Plaintiffs.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter comes before the Court upon Shell Oil Company's Motion for Summary Judgment [doc. # 190]. The Court is also in receipt of the United States' Response to Shell Oil Company's Motion for Summary Judgment [doc. # 289]; Solutia Inc.'s and Mallinckrodt Inc.'s Memorandum in Opposition to Shell Oil Company's Motion for Summary Judgment [doc. # 290]; and Fiatallis North America, Inc.'s Response to Shell Oil Company's Motion for Summary Judgment and Adoption of
Arguments Raised in the United States' Response to Shell Oil's Motion [doc. # 294].
The United States of America brought this action against Shell, as well as against Solutia, Inc. and Mallinckrodt, Inc., under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675. Thereafter, Solutia and Mallinckrodt brought a cross-claim against Shell, pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f)(1), seeking contribution for any response costs adjudged against them.[1] Fiatallis North America, Inc., a third-party defendant brought into the case by Solutia and Mallinckrodt, also filed a cross-claim against Shell.

I. BACKGROUND FACTS
The Great Lakes Container Corporation Superfund Site (hereinafter "the Site") was a drum reconditioning and reclamation facility in St. Louis, Missouri.[2] The Site operated between 1952 and 1986. The Site reconditioned both open-head drums, which had been used to contain a wide variety of products, such as glue, paint, ink, rubber cement, and baking enamel, and closed-head drums, which had been used to hold mainly oil or petroleum-derivative products. Open-head drums were reconditioned by being sent through an incinerator, a shot-blaster, and a hydraulic expander. The closed-head drums were reconditioned by being flushed with acids and being sent through a shot-blaster and a de-denting machine. Both types of *813 drums were then repainted. The United States alleges that the reconditioning process generated wastes that consisted of the contents of the drums, incinerator ash, bag house waste, and sludge from the repainting booth. As a result, the United States says that during the course of the Site's operation as a drum reconditioning and reclamation facility, the Site became contaminated with hazardous substances, including lead, polychlorinated biphenyls, chlordane, and asbestos. In January 1996, the United States Environmental Protection Agency ("EPA") began directing the clean up of the environmental contamination at the Site. The EPA claims that it has incurred approximately $9,127,244.30 in response costs for performing these clean up functions.
On October 1, 2002, the United States filed a complaint against Solutia, Mallinckrodt, and Shell, which was amended on March 31, 2002. In its First Amended Complaint, the United States asserts that from 1952 to 1986, Shell had a contract with the Northwest Cooperage Company ("Northwest"), the predecessor of Great Lakes Container Corporation, whereby it sent approximately 1,000 to 1,500 55-gallon steel drums a day to the Site for reconditioning. The United States further alleges that some or all of the drums Shell sent to the Site to be reconditioned contained residue of hazardous substances, and that those hazardous substances, "including liquids in the drums and paint residue on the outside of the drums," remained at the Site. Thus, the United States claims that Shell is liable to it for response costs as an arranger under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

II. SUMMARY JUDGMENT STANDARD
Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Crumley v. City of St. Paul, 324 F.3d 1003, 1006 (8th Cir.2003). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, All U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.CivP. 1).
"`By its terms, [Rule 56(c)(1)] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no genuine issue of material fact.'" Hufsmith v. Weaver, 817 F.2d 455, 460 n. 7 (8th Cir.1987) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added by Supreme Court)). Material facts are "those `that might affect the outcome of the suit under the governing law[.]'" Id. (quoting Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505). Summary judgment will be denied due to a material issue of genuine fact if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Crumley, 324 F.3d at 1006. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U S. at 322-23, 106 *814 S.Ct. 2548, quoted in St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 595 (8th Cir.2001).
The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. Crumley, 324 F.3d at 1006 (citing Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 487 (8th Cir.1998)). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson, 477 U.S. at 249, 106 S.Ct. 2505. To meet its burden, the nonmoving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. 1348.
In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. Crumley, 324 F.3d at 1008. The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 586, 106 S.Ct. 1348. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." Kampouris v. St. Louis Symphony Soc, 210 F.3d 845, 847 (8th Cir.2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." Id.

III. ANALYSIS
The United States asserts in its First Amended Complaint that Shell is liable to it for response costs as an arranger under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). To establish that a defendant is liable for response costs under CERCLA, a plaintiff must show: (1) that the contaminated site is a facility; (2) that there was a release or threatened release of hazardous substances at the facility; (3) that the United States incurred response costs because of the release or threatened release of hazardous substances; and (4) that the defendant falls within one of CERCLA's four categories of responsible persons in § 9607(a). United States v. Aceto Agric. Chem. Co., 872 F.2d 1373, 1379 (8th Cir.1989). The categories of responsible persons includes:
[A]ny person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances[.]
42 U.S.C. § 9607(a)(3). The term "disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land[.]" 42 U.S.C. § 6903(3). The term "treatment" "means any method, technique, or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous[.]" 42 U.S.C. § 6903(34).
"The language of CERCLA's arranger subsection specifically requires that one arrange for disposal or treatment, or arrange for transportation for disposal or treatment." United States v. TIC Inv. Corp., 68 F.3d 1082, 1090 n. 7 (8th Cir.1995). However, the Eighth Circuit has also held "that arranger liability *815 under § 9607(a)(3) does not impose [a] specific intent requirement^]" Id. at 1089. "In deciding questions of arranger liability, [the courts] do not rely on brightline rules but look to the totality of the circumstances to determine whether the facts of a given case fit within CERCLA's 'overwhelmingly remedial scheme.'" United States v. Hercules Inc., 247 F.3d 706, 721 (8th Cir.2001) (quoting United States v. Northeastern Pharrn. & Chem. Co., 810 F.2d 726, 733 (8th Cir.1986)). Additionally, courts have "`not hesitated to look beyond defendants' characterizations to determine whether a transaction in fact involves an arrangement for the disposal of a hazardous substance.'" Id. (quoting Aceto, 872 F.2d at 1381). Once a person is found to be a responsible party, "CERCLA imposes strict liability and joint and several liability." Aceto, 872 F.2d at 1377.
Shell contends that it is entitled to summary judgment on the United States' claim against it for several reasons. First, Shell argues that it is entitled to summary judgment because the United States has not presented evidence to show that it sent hazardous substances to the Site, in that it has not shown that the drums Shell sent to the Site were painted with lead-based paint. Secondly, Shell asserts that it should be granted judgment as a matter of law because it did not arrange for the disposal of hazardous substances at the Site in that it sent a useful product to the Site, namely 55-gallon steel drums. Third, Shell claims that it is entitled to summary judgment because even if it arranged for the disposal of hazardous substances at the Site, it had no control over or participation in the disposal of any hazardous substances at the Site. Fourth, Shell maintains that summary judgment in its favor is appropriate because the reconditioning of drums qualifies as the recycling of recyclable material, an activity which is specifically exempted from liability under CERCLA.
In response, the United States asserts that Shell is not entitled to summary judgment because it has sufficiently alleged that the paint on Shell's drums contained lead. In addition, the United States says that the reconditioning of used drums at the Site does not qualify as the sale of a useful product. The United States further contends that Shell may be liable as an arranger notwithstanding the fact that it did not control or participate in the disposal process at the Site. Finally, the United States argues that the reconditioning of drums at the Site does not fall into CERLA's recycling exception.

A. Evidence of Hazardous Substance
Shell first asserts that it is entitled to summary judgment on the United States' claim against it for response costs because the United States has not presented evidence to establish that it sent hazardous substances to the Site. Shell states that the United States "alleges that Shell is liable under CERCLA for the presence of leadcontaminated soil at the [Site] that originated during the process of repainting the drums." However, Shell argues that the United States has not proven this claim because "[t]here is no evidence that drums sent by Shell to the [Site] for reconditioning had lead paint on them."
In support of this argument, Shell sets forth the following statements in its statement of uncontroverted material facts: "Plaintiff has provided no evidence that the `Shell drums' reconditioned by [Northwest] and [Great Lakes Container Corporation] contained lead"; "Shell knows of no evidence that the `Shell drums' reconditioned by [Northwest] and [Great Lakes Container Corporation] contained lead"; and "Shell never arranged *816 for or agreed to any disposal or treatment of lead at the [Site]." Yet, Shell does not present any evidence or point to anything in the record to support these statements of fact. To succeed on a motion for summary judgment, "[t]he moving party has the burden of establishing the right to summary judgment on the record submitted." Kurtz v. City of Shrewsbury, 245 F.3d 753, 757 (8th Cir.2001) (emphasis added). "The moving party bears the initial burden of identifying `those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134-35 (8th Cir.1998) (quoting Celotex, 477 U.S. at 323, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c))) (emphasis added). Furthermore, while "[i]t is enough for the movant to bring up the fact that the record does not contain such an issue," the movant must also "identify that part of the record which bears out his assertion." City of ML Pleasant, Iowa v. Assoc. Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir.1988) (emphasis added). "Once this is done, [the moving party's] burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the [non-moving party's] burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue." Id. at 274. However, if the moving party fails to meet its initial burden, the burden is never passed to the nonmoving party. See Handeen v. Lemaire, 112 F.3d 1339, 1346 (8th Cir.1997) (holding "[d]ue to the [moving party's] failure to meet its initial burden, the onus never passed to [the non-moving party] to `set forth specific facts showing that there is a genuine issue for trial.'" (citation omitted)). "`[E]ven when the non-movant bears the burden of proof at trial, simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case.'" Id. (quoting Ashe v. Corley, 992 F.2d 540, 543 (5th Cir.1993)).
Since Shell did not point to anything in the record to support its argument that there is no evidence that it sent drums painted with lead-based paint to the Site, it has not met its burden. Consequently, the United States is not required to set forth specific evidence showing that Shell did send such drums to the Site. Therefore, the Court finds that summary judgment is not appropriate on this ground.

B. Sale of a Useful Product
Shell next argues that it is entitled to summary judgment on the United States' claim against it because it did not arrange for the treatment or disposal of a hazardous substance at the Site, but instead sent a useful product, i.e., 55-gallon steel drums, to the Site.
Although courts impose CERLA liability on those parties who arrange for the disposal of hazardous waste, courts have "refused to impose liability where a 'useful' substance is sold to another party, who then incorporates it into a product, which is later disposed of." Aceto, 872 F.2d at 1381. "Parties do not `arrange for the disposal' and thereby incur CERCLA liability merely by selling a hazardous substance." Douglas County, Nebraska v. Gould, Inc., 871 F.Supp. 1242, 1245 (D.Neb.1994). "The sale of a useful, although hazardous substance, to serve a particular purpose, is not an arrangement for disposal and will not impose CERCLA liability." Id. "`Selling hazardous substances as part of a complete, useful product does not generally make a party a *817 responsible person.'" Id. (citations omitted). However, "[m]erely characterizing a transaction as a sale, ..., cannot insulate a party from CERCLA liability." Id. "[C]ourts have not hesitated to look beyond defendants' characterizations to determine whether a transaction in fact involves an arrangement for the disposal of a hazardous substance." Aceto, 872 F.2d at 1381.
In support of its useful product defense, Shell states that it "entered into an agreement with [Northwest], a predecessor of [Great Lakes Container Corporation], for the `reconditioning' of certain Shell drums so that the drums could be reused." Shell notes that pursuant to its contract with Northwest, Northwest was to return Shell's reconditioned drums to it. In doing so, Shell claims that it "conveyed a useful product to [Great Lakes Container Corporation] and its predecessors, and [ ] was not trying to dispose of a by-product." Shell also claims that "there is no evidence that Shell took any `affirmative act' to dispose of any lead on the [Site], but simply supplied [Great Lakes Container Corporation] with a useful product (drums) for a useful purpose (reconditioning)."
Notwithstanding this argument, the Court finds that Shell's useful product defense fails. In making this argument, Shell appears to be confused about the basis of the United States' claim of liability against it. In its First Amended Complaint, the United States is not claiming that Shell is liable as an arranger because it sent drums to the Site for disposal. Rather, the United States claims that by contracting with Northwest to recondition its used drams, Shell arranged for the disposal of the lead-based paint on the outside of the drums at the Site. Thus, the fact that the drums themselves could be considered a useful product does not shield Shell from arranger liability under CERCLA because the United States has not alleged that the drums were a hazardous substance. Shell has not presented any evidence or argument to show that it sent the lead-based paint to the Site as a useful product for a useful purpose. As such, Shell is not entitled to summary judgment on this ground.

C. Control and Participation in the Disposal Process
Shell's third argument is that it is entitled to summary judgment because it did not have actual control over, or participation in, the disposal of any hazardous substances at the Site. Shell argues that by entering into an agreement with Northwest for the reconditioning of its drums, it was not agreeing to the disposal of any hazardous substances at the Site.
As noted previously, the Eighth Circuit has held "that arranger liability under § 9607(a)(3) does not impose [a] specific intent requirement.]" TIC Inv. Corp., 68 F.3d at 1089. However, "a finding of arranger liability requires some level of actual participation in, or exercise of control over, activities that are causally connected to, or have some nexus with, the arrangement for disposal of hazardous substances or the off-site disposal itself." Id. at 1087-88.
In this case, the evidence is that Shell entered into a contract with Northwest, whereby Northwest agreed to recondition Shell's used 55-gallon steel drums. Pursuant to the contract, title to the drums would remain with Shell throughout the reconditioning process and Northwest would return the drums to Shell after they were reconditioned. In addition, the evidence shows that Shell sent between 1,000 to 1,500 drums a day to the Site for reconditioning.
*818 The evidence, in the form of the affidavits of Louis Weinberger, a former employee of Northwest and Great Lakes Container Corporation, and John Tureen, former General Manager of Northwest, also establishes that the process for reconditioning the drums consisted of open-head drums being sent through an incinerator, a shot-blaster, and a hydraulic conveyor, and closed-head drums being flushed with acids and sent through a shot-blaster and a de-denting machine. This process, among other things, removed the paint from the outside of the drums and the drums were then repainted. Mr. Weinberger and Mr. Tureen further averred that both reconditioning processes generated hazardous waste that consisted of the drum contents, incinerator ash, bag house waste, and sludge from the repainting booth.
When viewed in the light most favorable to the United States, the Court finds that the evidence that Shell had a drum reconditioning agreement with Northwest, Shell sent between 1,000 to 1,500 drums a day to the Site for reconditioning, and this reconditioning of drums generated hazardous waste at the Site is sufficient to create a genuine dispute of material fact over whether Shell participated in or had control over activities that were causally connected with the disposal of hazardous waste at the Site. The fact that Shell did not specifically agree to or intend for the disposal of hazardous waste at the Site is of no consequence. See TIC Inv. Corp., 68 F.3d at 1089. See also United States v. Conservation Chemical, 619 F.Supp. 162, 249 (W.D.Mo.1985) (noting that there is no requirement in CERLA that, to be liable as an arranger, "that the generator deliberately or intentionally transport waste or arrange for waste to be transported to a facility containing hazardous substances"). Therefore, the Court finds that summary judgment is not appropriate on this ground.

D. Recycling Exception
Shell further maintains that it is entitled to summary judgment because its contract with Northwest for the reconditioning of its drums qualifies as an arrangement for the recycling of recyclable material, which is specifically exempted from CERCLA liability.
CERCLA provides that "a person who arranged for recycling of recyclable material shall not be liable under sections 9607(a)(3) and 9607(a)(4) of this title with respect to such material." 42 U.S.C. § 9627(a)(1). The term "recyclable material" is defined as "scrap paper, scrap plastic, scrap glass, scrap textiles, scrap rubber (other than whole tires), scrap metal, or spent lead-acid, spent nickel-cadmium, and other spent batteries, as well as minor amounts of material incident to or adhering to the scrap material as a result of its normal and customary use prior to becoming scrap[.]" 42 U.S.C. § 9627(b). However, the term "recyclable material" does not include "shipping containers of a capacity from 30 liters to 3,000 liters, whether intact or not, having any hazardous substance (but not metal bits and pieces of hazardous substance that form an integral part of the container) contained in or adhering theretof.]" 42 U.S.C. § 9627(b)(1).
Shell contends that it falls into this recycling exception because the reconditioning agreement it had with Northwest was an arrangement for the recycling of scrap metal. Transactions involving scrap metal are deemed to be an arrangement for recycling if the person who arranged for the transaction can prove:
(1) The recyclable material met a commercial specification grade.

*819 (2) A market existed for the recyclable material.
(3) A substantial portion of the recyclable material was made available for use as feedstock for the manufacture of a new saleable product.
(4) The recyclable material could have been a replacement or substitute for a virgin raw material, or the product to be made from the recyclable material could have been a replacement or substitute for a product made, in whole or in part, from a virgin raw material.
See 42 U.S.C. § 9627(c) and (d). Shell claims that its transaction with Northwest meets all of these requirements. Shell states that the drums met a commercial specification grade because they "were specifically chosen for and capable of being recycled" and "were in fact recycled and returned to Shell for future use." In addition, Shell asserts that "[t]he existence of the [Site] and the number of years that Shell sent drums to be recycled at the site are proof that a market existed for recyclable drums." Shell also says that "[t]he third and fourth requirement of § 9627(c) were satisfied by Shell in that a substantial portion of the recyclable drums were made available as containers for the sale of petroleum products." Finally, Shell avers that the exception under § 9627(b) is not applicable to its drums "because any paint on the outside of Shell's drums formed an 'integral part of the container.'"
The Court finds that Shell has not shown, based on the undisputed facts, that its arrangement with Northwest qualifies under the recycling exception. First, the Court notes that Shell has not presented any evidence from the record to support its claim that its drums "were specifically chosen for and capable of being recycled." Secondly, the Court concludes that Shell has not shown that "[a] substantial portion of the recyclable material was made available for use as feedstock for the manufacture of a new saleable product," because there is no evidence that new drums were being made from Shell's old drums. Rather, the evidence is that the drums Shell sent to the Site were the same drams that were returned to Shell after they were reconditioned. Third, the Court finds that Shell has failed to present any evidence to support its claim that the paint on the outside of its drums was an integral part of the drams, rather than merely adhering to the drums, such that they do not fall into the exception in § 9627(b)(1).[3] Therefore, the Court concludes that Shell has failed to meet its burden, and summary judgment is not appropriate on this ground. See Kurtz, 245 F.3d at 757.
Accordingly,
IT IS HEREBY ORDERED that Shell Oil Company's Motion for Summary Judgment [doc. # 190] is DENIED.
NOTES
[1] In its reply to Solutia and Mallinckrodt's response to its motion for summary judgment. Shell argues that Solutia and Mallinckrodt's response should not be considered by this Court because they did not have a valid crossclaim against Shell at time they filed their response. The Court declines to address the issue of the propriety of Solutia and Mallinckrodt's cross-claim at this time.
[2] When considering a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir.1995).
[3] In its reply to the United States' memorandum in opposition to its motion for summary judgment, Shell expands on its argument that paint on the outside of its drums was an integral part of the container:

Paint on the outside of a drum, even if containing a hazardous substance, is an `integral part of the container.' It helps protect the drum from the weather and inhibits rust thus enabling the container to keep its contents (hazardous or not) inside the drum rather than leaking out and presenting problems, and even dangers, to those coming near or into contact with the drums. Obviously the paint plays an important role in the proper functioning of the drum and is therefore an `integral part of the container' and not just something stuck or `adhering thereto.'
Nevertheless, Shell does not present any evidence from the record to support this argument.